UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)            Date: April 16, 2014

Title: <u>RUBITH HERNANDEZ V. COLLECTION BUREAU OF AMERICA, LTD.</u>

PRESENT:

<u>HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE</u>

<u>Michelle Urie</u>            <u>N/A</u>
Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present            None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [filed 1/31/14]

## I. Introduction

Plaintiff Rubith Hernandez alleges that in October 2013, she received four phone calls on her cellular phone from Defendant Collection Bureau of America ("CBA") seeking to collect a debt that she allegedly did not owe. (Dkt. No. 1 ["Compl."] ¶¶ 16–17.) Ms. Hernandez alleges that she has never provided her contact information to, nor has she ever entered into a business relationship with, CBA. (Compl. ¶¶ 13–15.) On the basis of these allegations, on October 17, 2013, Ms. Hernandez filed a putative class action complaint alleging that CBA had violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Now before the Court is CBA's motion for summary judgment on the sole ground that the equipment CBA used to call Ms. Hernandez is not an "automated telephone dialing system" as defined by the TCPA. (Dkt. No. 14 ["Mot. Summ. J."].) For the reasons stated herein, CBA's motion is **DENIED**.

## II. Background

The CT Center is a telephone system that is used by CBA in the course of its business operations, including making calls to Ms. Hernandez's cellular phone in October 2013. (Dkt. No. 14-2 ["SUF"] ¶¶ 5–6.) The CT Center does not have any computer code that allows it to generate either random or sequential telephone numbers, nor does it have the capacity to store or produce and call numbers from a number generator. (SUF ¶¶ 7–

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)            Date: April 16, 2014
                                                                                                        Page 2

---

8.) Rather, the CT Center operates by interfacing with a database of debtor accounts — including phone numbers — provided to it by its user, CBA. (SUF ¶ 9.) The list of particular accounts to be contacted on any given day is created the prior evening by CBA's President, Shawn DeLuna. (SUF ¶ 12.) Once the CT Center is provided a list of accounts — and therefore, telephone numbers — to contact, it is able to place calls to those account holders using certain pre-defined calling criteria. (SUF ¶ 19.) If desired by CBA, these calls can be made using the CT Center's predictive dialing capability. (*See* Dkt. No. 18-2 ["CT Center Manual"] at 14.) Using that capability, the system can calculate the anticipated time when an agent on a call will be available to take another call, based on factors like that agent's average talk time, and place calls accordingly. (*See* Dkt. No. 18-3 ["Cooper Depo."] at 22:13–23:12.) In doing so, the system is able to minimize each agent's idle time, waiting for the call recipient to answer the call. (*Id.*)

## III. Legal Standard

Summary judgment is proper where the pleadings, discovery and disclosure materials on file, as well as any affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g. Co., Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)            Date: April 16, 2014
                                                                           Page 3

---

*Gen. Tel. Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

**IV. Analysis**

Congress enacted the TCPA in 1991 in response to consumer complaints about the growing number of telemarketing calls and use of telemarketing practices that were found to be an invasion of consumer privacy. As relevant here, the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. §227(b)(1)(A). The Act further defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

In 2003, the Federal Communications Commission ("FCC") was asked for guidance as to whether predictive dialers fell within the scope of the TCPA's definition of automatic telephone dialing system.[1] *See* FCC 2003 Order at 14090–92. The

---

[1] In its Order, the FCC described a predictive dialer as

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)            Date: April 16, 2014
                                                                              Page 4

Commission noted that unlike prior versions of automated dialing technology, which created and dialed 10-digit phone numbers arbitrarily, predictive dialers relied on a stored database of numbers which could then be dialed at a rate to ensure that when a consumer answered the phone, a sales person would be available to take the call. *Id.* at 14091–92. The Commission also noted that while such technology was a clear advance in the nature of automated dialing equipment, to exclude it from coverage under the TCPA simply because it relied on phone numbers being pre-programmed into the system rather than arbitrarily producing random or sequential numbers to call, would lead to an unintended result.[2] *Id.* The Commission recognized that technological advances aside, "the basic function of such equipment . . . has not changed—the capacity to dial numbers without human intervention." *Id.* at 14092. Therefore, because predictive dialers had the capacity to dial numbers without human intervention, the Commission concluded that they fell within the statutory definition of automatic telephone dialing system and the intent of Congress. *Id.* at 14092–93. In 2008, the FCC issued a declaratory ruling affirming the 2003 Order. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Dkt. No. 92-90, 23 FCC Rcd. 559 (2008).

       In support of its position that the CT System is not an automatic telephone dialing system, CBA argues that the FCC's clarification of what constitutes an automatic telephone dialing system under the TCPA is not entitled to any deference. CBA argues that in 2009, the Ninth Circuit held in *Satterfield v. Simon & Schuster* that the language in the TCPA defining an automated telephone dialing system was "clear and unambiguous." (Dkt. No. 19 ["Def.'s Reply"] at 1 (citing *Satterfield*, 569 F.3d 946 (9th Cir. 2009).)

---

numbers. . . . [I]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-278, 18 FCC Rcd. 14014, 14091 (2003) ("FCC 2003 Order").

[2] During the notice-and-comment period for the 2003 Order, several companies specifically argued that predictive dialers fell outside the scope of the TCPA because they relied upon a list or database of telephone numbers, rather than numbers that were randomly or sequentially generated. *See Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725–26 (N.D. Ill. 2011) (aggregating comments). As made evident by its ultimate ruling in the 2003 Order, the FCC was unpersuaded.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)   Date: April 16, 2014
                                    Page 5

---

Therefore, to defer to the FCC's interpretation of the term would "improperly re-define the TCPA's prohibitions — and the FCC's authority — beyond the plain meaning of the statute. (*Id.* at 3 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).)

The Court lacks jurisdiction to entertain CBA's challenge to the validity of the FCC's rule. Under the Administrative Orders Review Act, known more informally as the Hobbs Act, the Court of Appeals is vested with "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of — all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. 2342(1). With some exceptions not relevant here, section 402 includes "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under [the Communications Act of 1934, as amended by the Telecommunications Act of 1996]." Taken together, these two statutes divest this Court of any authority to rule on the validity or invalidity of the FCC's 2003 Order. Indeed, for the Court to agree, or even disagree, with CBA's argument would be to violate the Hobbs Act. *See Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 399–400 (9th Cir. 1996) (noting that asking a district court to agree or disagree with an FCC ruling invokes the Hobbs Act's jurisdictional bar). Rather, the Court is simply bound to apply the FCC's rulings.[3]

Applying the FCC's Orders, CBA is not entitled to judgment as a matter of law. It appears that the CT Center used by CBA has the capability of operating without human intervention, and that it therefore constitutes an automatic telephone dialing system for purposes of the TCPA. The CT Center user manual, for example, notes that "[i]n predictive dialing mode, CT Center makes calls ahead of when the agent is available to accept the call. A calculation is made that determines the optimum timing of the call(s) to ensure that, when the agent does become available, there will be another call waiting."

---

[3] Despite CBA's citation to *Satterfield*, there is in fact no Ninth Circuit authority that controls the outcome of this case. In *Satterfield*, the court held that in evaluating whether dialing equipment is an automatic telephone dialing system, the statutory language clearly and unambiguously requires only that the equipment have the *capacity* to store or produce telephone numbers to be called, not that it *actually* does so. *Satterfield*, 569 F.3d at 951. Because the district court looked to the equipment's actual function, rather than its capacity, the *Satterfield* court held that it had erroneously granted summary judgment. *Id.* That outcome, however, did not require any evaluation of the validity of the FCC's 2003 Order, and certainly did not explicitly provide that in issuing the 2003 Order, the FCC overstepped its interpretive authority.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-01626-CJC(DFMx)            Date: April 16, 2014
                                                                         Page 6

(CT Center Manual at 24.) Similarly, describing the predictive dialing system, Randall Cooper, Director of Dialer Technology for Information Access Technology, Inc. — the manufacturer of the CT Center — testified that the technology is able to employ an algorithm to determine in real-time how long an agent spends on an average phone call, and therefore, when the agent should be ready to take the next call. (Cooper Depo. at 14:13–16:9; *see also* Dkt. No. 14-5 ["Cooper Decl."] ¶ 5 ("CT Center estimates how long an agent will be on a call and how long it will take to secure another live contact.").) "Based on its algorithm, [CT Center] then dials the next phone number retrieved from a pre-defined phone number list." (Cooper Decl. ¶ 5.) CBA does not appear to dispute that CT Center can operate without human intervention. Therefore, the Court finds that as provided for by the FCC's 2003 Order, the CT Center, which was employed by CBA to call Ms. Hernandez, is an automatic telephone dialing system for purposes of the TCPA.

## V.   Conclusion

      Because the Court finds that the CT Center is an automatic telephone dialing system, CBA's motion for summary judgment is **DENIED**.

rrd

MINUTES FORM 11
CIVIL-GEN                                                                                  Initials of Deputy Clerk MU